UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANGELA MAE LEWIS,

**Plaintiff,**

                                        Case No. 1:18-cv-1279-TPK

v,

**COMMISSIONER OF SOCIAL**            OPINION AND ORDER
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

      Plaintiff Angela Mae Lewis filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on October 1, 2018, denied Ms. Lewis's application for disability insurance benefits. Ms. Lewis has now moved for judgment on the pleadings (Doc. 10) and the Commissioner has filed a similar motion (Doc. 12) . For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I. BACKGROUND

      Plaintiff's application for disability insurance benefits was filed on November 17, 2014. In her application, she alleged that she became disabled on October 22, 2013, due to Factor V (a blood clotting disorder), a herniated disc, and nerve damage in her lower legs. She was 42 years old at the time her application was filed.

      After initial administrative denials of her claim, Plaintiff appeared and testified at an administrative hearing held on April 13, 2017. A vocational expert, Jay Steinbrenner, also testified at the hearing.

      The Administrative Law Judge issued an unfavorable decision on September 26, 2017. After finding that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017 and that she had not worked since her alleged onset date, he concluded that Plaintiff suffered from severe impairments including herniated lumbar disc with neuropathy and Factor V deficiency. According to the ALJ, these impairments limited Plaintiff to performing work at the sedentary exertional level with the need to change positions from sitting to standing every 30 minutes. She also could not climb ladders, ropes, or scaffolds or crawl, and she could

only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. Finally, she could not be exposed to unprotected heights, moving machinery, and excessive vibration.

Mr. Steinbrenner, the vocational expert, was asked whether a person with these limitations could do any of Plaintiff's past relevant work, which included stock clerk, assistant produce manager, and cashier/checker. He said that these jobs would not be available to someone limited to working at the sedentary level. However such a person could work as a telephone survey worker, a telemarketer, or a ticket seller. Mr. Steinbrenner also described the number of these jobs which existed in the national economy. In response to additional questioning, he testified that imposing a five-pound lifting limit would not affect the ability to do those jobs, but that being off task 20% of the time or being unable to do simple, routine tasks consistently during the workday or work week would preclude employment. The ALJ concluded, based on this testimony, that Plaintiff was able to perform substantial gainful activity. Consequently, the ALJ found that she was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts that there are three reasons for reversing the ALJ's decision and remanding the case. She argues, first, that the ALJ's finding at Step Three of the sequential evaluation process, where the ALJ concluded that Plaintiff did not have an impairment of sufficient severity to satisfy the Listing of Impairments, is not supported by substantial evidence. Second, she contends that the ALJ's residual functional capacity finding is also not supported by substantial evidence. Lastly, she asserts that the ALJ did not apply the appropriate legal standard when evaluating her credibility.

## II. THE KEY EVIDENCE

The key evidence in this case includes both the medical records and Plaintiff's own testimony. The Court will summarize the relevant portions of each.

Plaintiff first testified at the administrative hearing about her past work, which ended in 2012. In her last job as an assistant produce manager, she was on her feet all day and lifted as much as 50 pounds. She stopped working because she was no longer able to push and lift as the job required. When asked if she could do a sedentary job, she said she could not sit all day, nor could she stand all day. At home, she alternated between sitting and standing every fifteen minutes. Her restrictions stemmed from a job-related incident where she injured her back.

When asked about treatment, Plaintiff said she had opted not to have surgery but she did take medications including Tramadol, ibuprofen, and muscle relaxers, and she used a TENS unit. Her pain, which she described as sharp, stabbing, and burning, had not gotten better over time, and she had good days and bad days but was never pain-free.

Plaintiff said she lived alone in a single-family home. On a typical day, she got up at 8:00, let the dogs out, watched television, and did household chores on a periodic basis. She was able to cook her own meals, clean, shop, and do laundry. She liked to hunt but had not done so since 2015. She was deemed able in 2012 to do light duty work, but her sciatic nerve had gotten worse since then and she lost feeling in her left leg. She did light duty work for six months but was in

severe pain by the end of each day.

Finally, Plaintiff said that her daughter helped her to buy dog food and take care of her two dogs. She drove only once per month and had a friend drive her to the hearing. She stopped once for 20 minutes during the one hour and 45 minute drive. She had help with yard work and snow removal. Plaintiff had a four-year-old grandson and was able to play with him for 15 or 20 minutes at a time.

The pertinent medical treatment records show that Plaintiff was injured in 2012 and received treatment that year for her back injury. In 2013, Plaintiff received an epidural injection to treat her back pain and was also prescribed a TENS unit. An MRI done that year showed an annular tear of the L5-S1 disc with left paraforaminal disc protrusion contacting the left S1 nerve root. She was not taking any pain medication at that time. An examination showed that she walked with an antalgic gait and could not walk on her heels or toes. She had some limitations in the range of motion in her back and straight leg raising was positive on the right. Her diagnoses included S1 joint region pain and dysfunction bilaterally as well as lumbosacral diskogenic radiculopathy and myofascial pain syndrome. In 2014, she was seen at a pain management clinic, but it was noted that she was adverse to having medications. (Tr. 242). That same note states that she completed her light-duty work assignment successfully but she was terminated because her employer would not permit her to continue with her light duty job. Her symptom control was described as fair. She was encouraged to do home exercises and to meet with a surgeon. Her doctor, Dr. Tracy, said that she had a 75% temporary impairment. (Tr. 245). Another note from 2014 said that she could not maintain any one position for an extended period of time, could not lift over ten pounds, and could not bend, pull, or push on a repetitive basis. (Tr. 257). Dr. Tracy also completed a functional capacity assessment in 2014, concluding that Plaintiff could lift, carry, push, and pull only five pounds, could sit, stand, and walk for only ten to fifteen minutes, and could not climb, kneel, bend, stoop, squat, or operate machinery. He did not think she met the requirements for sedentary work. (Tr. 495). Another review in 2014, done by a physician's assistant, Joseph Beang, and signed off by Dr. DenHaese, confirmed a 75% temporary impairment and noted that because surgery was still an option, Plaintiff had not reached maximum medical improvement. (Tr. 478).

Additional records document the following. A treatment note from Foothills Medical Group in 2014 indicated Plaintiff had a 100% impairment; the note was made by a physician's assistant, James Tkacik, but signed off on by a medical doctor, Dr. Mills. (Tr. 506-07). There are other similar notes from that provided from both 2014 and 2015 which also document bilateral paralumbar tenderness and spasm as well positive straight leg raising bilaterally and substantially reduced range of motion. Mr. Tkacik consistently commented in his notes, all of which Dr. Mills countersigned, that although she had a 75% impairment, "[t]here should be no heavy lifting, pushing, or pulling." He had previously (in 2014) completed a form indicating that Plaintiff could lift up to ten pounds and could sit, stand, and walk up to four hours per day and that she could work with restrictions, although she could not return to her former job. He also stated, however, that she could work only four hours per day. (Tr. 384-85). Finally, when Plaintiff underwent an annual physical examination in 2016, Dr. Depner noted that her sciatica had improved, that she showed only tenderness to the left SI joint on palpation, that she walked with a normal gait and

station, and that her range of motion was physiologic.(Tr. 552).

Plaintiff underwent a consultative examination for workers' compensation purposes on March 28, 2013. She told the examiner, Dr. Coniglio, that she experienced such pain as a result of her epidural injection that she would never have another one. She said her pain was located in her low back and right leg and was aggravated by cleaning or prolonged sitting and standing as well as lifting and bending. She was able to walk 200 feet and lift five pounds. She was tender in the lumbar area on examination and had restrictions on her range of motion. Deep tendon reflexes were absent and straight leg raising was positive on the right side. Dr. Coniglio diagnosed herniated disc syndrome at L5-S1 with right L5-S1 radiculopathy. He concluded that she could lift 20 pounds occasionally and ten pounds frequently, needed to be able to sit, stand, and walk at her option, could not climb ladders, and could not kneel, squat, or crawl. He thought she should be sent back to work with light duty restrictions and that she needed surgery on her back. (Tr. 284-91). He saw Plaintiff again in 2014 and reached the same conclusions. (Tr. 292-99).

Dr. Liu performed a consultative examination on January 28, 2015. At that time, Plaintiff's gait was normal but she could not toe or heel walk due to pain. She could get up from a chair without difficulty. He noted some restrictions in the range of motion of her lumbar spine, but not as severe as those noted by Dr. Coniglio. Straight leg raising was positive bilaterally. Dr. Liu diagnosed chronic low back pain and history of factor V deficiency. He believed she had mild to moderate limitations for prolonged walking, bending, and kneeling. (Tr. 482-85).

Dr. Gosy examined Plaintiff in November, 2014. She described her back pain as seven or eight out of ten, without relief from any treatment she had tried. She was taking only aspirin at that time. At that examination, straight leg raising was negative bilaterally but she showed some restriction on range of motion and muscle spasm. His diagnosis was mechanical pain in the lumbar territory. He recommended Balcofen, a facet block, and enrollment in a vocational retraining program. He thought her degree of disability was 50% and recommended that she not lift more than 15 pounds and that she avoid repetitious bending as well as prolonged sitting and standing. (Tr. 498-501). Several months later, the same office treated Plaintiff for radicular and neuropathic pain in her right leg and she received several trigger point injections.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A. Listing of Impairments

Plaintiff first argues that the ALJ did not properly evaluate her back impairment under the applicable section of the Listing of Impairments, Section 1.04.  She claims that the ALJ, although he cited the correct section in that portion of his decision, did not analyze the issue correctly.  The Court will begin its analysis with a summary of the ALJ's discussion of the Listing.

Under section 1.04(A) of the Listing of Impairments, disability is established if a claimant suffers from a spinal disorder (including herniated nucleus pulposus) which results in compromise of a nerve root or the spinal cord, and where there is "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss ... accompanied by sensory or reflex loss and ... positive straight-leg raising test (sitting and supine)."  The ALJ, in discussing whether Plaintiff suffered from an impairment of that severity, said only this: "The medical evidence does not establish a spinal impairment, with neurological deficits, as described in the listing."  (Tr. 13).  Plaintiff argues that this conclusory statement is insufficient in light of the existence of medical evidence which does satisfy the criteria of section 1.04(A), and contends that it prohibits the Court from engaging in a meaningful review of the ALJ's decisional process.  The Commissioner, in turn, asserts that the medical evidence does not show one of the necessary prerequisites for establishing disability under section 1.04, namely nerve root compression, pointing out that the records demonstrate only contact between Plaintiff's disc bulge and the nerve root without actually compressing it, and that she also did not demonstrate that she met other criteria for a continuous period of twelve months because the evidence about abnormal reflexes, diminished sensation, and limitation on range of motion varied from examination to examination.

This Court has explained, in these words, the obligation imposed on an ALJ to explain the logical relationship between the medical evidence and the conclusion that a claimant does not suffer from an impairment of sufficient severity to meet or equal a listed impairment:

> An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood* [ *v. Astrue*], 614 F.Supp.2d [252 (N.D.N.Y. 2009), *adopted,* 614 F.Supp.2d 252 (N.D.N.Y. 2009)] at 273 (quoting *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 52 (W.D.N.Y. 2002) ) (alteration in original). "[I]t is the ALJ's responsibility ... to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Loescher* [v. *Berryhill*, 2017 WL 1433338 (W.D.N.Y. Apr. 24, 2017)], at *3, 2017 U.S. Dist. LEXIS 61642, at *7 (internal quotations and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F.Supp.3d 493, 507 (S.D.N.Y. 2014) (citation omitted)

*Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 237 (W.D.N.Y. 2019). Since the ALJ in this case did not provide any explanation of his reasoning process, the Court can uphold his conclusion on this issue only if other parts of his decision, and other credible evidence, satisfies the applicable standard of review.

In this case, the ALJ extensively summarized the medical evidence when determining Plaintiff's residual functional capacity. In doing so, he acknowledged the existence of tests showing a disc protrusion at L5-S1 with an associated annular tear as well as various examinations where straight leg raising was positive at times and negative at times. (Tr. 16). He also recited findings such as present and equal deep tendon reflexes, intact sensation, and normal motor strength, as well as tests producing somewhat more abnormal results in those areas. (Tr. 17). The ALJ clearly did not credit the most extreme results of these tests, finding that the objective evidence did not support restrictions beyond those incorporated into his residual functional capacity finding. (Tr. 18). Given that there were conflicts in the evidence which would support a finding that Plaintiff's impairment met all of the criteria set forth in section 1.04, and, as the Commissioner points out, ambiguous evidence on the issue of nerve root compression, this is a case where the evidence and other portions of the administrative decision may well support the conclusion that Plaintiff did not qualify for disability under the Listing of Impairments. Under the rule set out in *Raymond*, the Court might therefore be justified in affirming this portion of the Commissioner's decision. However, since, as set forth in the following section, there is another sufficient basis for remand, it would be appropriate for the Commissioner to revisit this issue and provide a more complete explanation about whether the Plaintiff's back impairment meets or equals the Listing.

## B. The Residual Functional Capacity Finding

Plaintiff's second argument focuses on the ALJ's residual functional capacity finding. She asserts that the ALJ did not evaluate the opinion evidence correctly and, in particular, erred in giving only limited weight to the opinion of Dr. Tracy, a treating source. She also argues that the ALJ failed to obtain clarification from sources who did not provide a function-by-function analysis to support their views about Plaintiff's disability. The Commissioner, in response, contends that the ALJ properly rejected much of Dr. Tracy's opinion due to its inconsistency with other medical evidence, and that it is mere speculation to assume that recontacting any of the others who supplied opinions would have given the ALJ a more complete record upon which to decide Plaintiff's claim.

As far as treating sources are concerned, the Court of Appeals has stated:

> "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " [*Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir.2008)] at 128 (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (holding that "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. See 20 C.F.R. § 404.1527(c)(2)(I), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Burgess*, 537 F.3d at 129 (alteration in original) (*quoting Halloran*, 362 F.3d at 33). The failure to provide " 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 [citation omitted]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

*Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015).

The ALJ dealt with the opinion evidence in this fashion. He first gave great weight to the opinion of Dr. Liu, the consultative examiner, reasoning that it was based on an examination and supported by Dr. Liu's knowledge of the Social Security program. He also gave great weight to the March, 2016 opinion of Mr. Tkacik that Plaintiff should avoid heavy lifting, pushing, or pulling, something which Mr. Tkacik had been putting in his notes since 2014, it being a restriction which the ALJ believed to be consistent with the demands of sedentary work. He did not ascribe much weight to the notations from either Mr. Tkacik or Dr. DenHaese concerning percentage of impairment, however, nor to the 2014 opinion from Mr. Tkacik noted above, at least to the extent that it restricted Plaintiff to a four-hour work day. He gave little weight as well to Dr. Coniglio's opinions and, finally, to Dr. Tracy's, commenting only that the latter opinion's "severe restrictions are inconsistent with the medical record as a whole." (Tr. 19). Plaintiff, relying on cases such as *Burgess, supra*, argues that the ALJ's decision is both procedurally inadequate because there is no indication that he applied the various factors set out in §404.1527(c) to that opinion, nor is the vague and conclusory statement about inconsistency with unspecified portions of the medical record enough to allow this Court to make a reasoned review of the ALJ's decision.

The Commissioner attempts to justify the short shrift given by the ALJ to Dr. Tracy's opinion by asserting that inconsistencies between the opinion of a treating source and the balance of the medical record is a perfectly valid reason for discounting the treating source's views. The Commissioner's memorandum notes that, in the same portion of the ALJ's decision in which Dr. Tracy's opinions are discounted, the ALJ laid out the conflicting evidence, including the opinions from, among others, Mr. Tkacik and Dr. Coniglio. The Commissioner also asserts that it is clear that the ALJ did apply §404.1527(c) correctly and that a "slavish" recitation of the factors set forth in that regulation is not required. *See* Doc. 12, at 16.

The Commissioner's argument is correct to some extent. This Court has held that

> failure "to refer explicitly to each regulatory factor in determining the weight to assign to a treating physician's opinion" does not warrant remand where the decision, read in its entirety, supports the conclusion that the ALJ "conscientiously applied the substance of the treating physician rule." *Jasen v. Comm'r of Soc. Sec.*, 2017 WL 3722454, *11 (W.D.N.Y. 2017); *see Estrella*, 925 F.3d [90 (2d Cir. 2019)] at 96 ("failure to 'explicitly' apply the Burgess factors when assigning weight ... is a procedural error" but does not require remand if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed") (internal quotations omitted).

*Chance v. Comm'r of Social Security*, 2019 WL 4564116, *6 (W.D.N.Y. Sept. 20, 2019). It is clear, however, that the ALJ made no mention of most of the relevant factors when dismissing Dr. Tracy's opinion, and it not clear from his decision that he considered any of them other than whether Dr. Tracy's view was consistent with the remainder of the medical record.

Performing the "searching review" of the record required by *Estrella, supra*, the Court cannot find the necessary assurance that the substance of the treating physician rule was followed

here.  Although the record appears to contain only one treatment note from Dr. Tracy (Tr. 496-97) the Commissioner does not dispute Plaintiff's characterization of him as a treating source. The ALJ's decision, however, does not acknowledge that he was a treating physician, either in its summary of his report and treatment note or in the evaluation of the opinion evidence.  That suggests at least the possibility that the ALJ did not consider him to be a treating physician and that he did not apply the necessary regulatory factors for that reason.  That conclusion is reinforced by the ALJ's very conclusory statement concerning inconsistencies between Dr. Tracy's findings and the medical evidence, since applicable law - both regulatory and case law - requires a much more explicit comparison of any alleged inconsistencies between a treating source opinion and the medical evidence.  This Court recently reaffirmed this rule and found wanting an ALJ's decision which attempted to justify the rejection of a treating source opinion "with the conclusory statement that the opinion was not supported by the record or Plaintiff's activity level." *See White v. Saul,* 2019 WL 5387735, *5 (W.D.N.Y. Oct. 22, 2019).  The Court must do the same here in order to insure that both Plaintiff and the Court can be confident that the ALJ properly evaluated Dr. Tracy's opinion in accordance with the law, rather than accept what amounts to a *post hoc* effort by the Commissioner to explain why the ALJ could have properly discounted that opinion.  That is simply not enough to prevent remand.  *See, e.g., Marthe v. Colvin*, 2016 WL 3514126, *8 (W.D.N.Y. June 28, 2016).

### C. Evaluation of Plaintiff's Credibility

As her final claim of error, Plaintiff asserts that the ALJ did not apply the proper legal standard when evaluating the reliability of her subjective reports of disabling symptoms.  She argues that the dictates of 20 C.F.R. §416.929 (identical to those found in 20 C.F.R. §404.1529, which applies in this disability benefits case) and SSR 16-3p were not followed here because the ALJ both failed to cite to any specific objective findings which are inconsistent with Plaintiff's testimony, and because he also failed to identify which specific allegations contained in her testimony were not substantiated by the medical evidence.

As this Court stated in *Wynn v. Comm'r of Social Security*, 342 F. Supp. 3d 340, 350 (W.D.N.Y. 2018):

> The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6, 2013 U.S. Dist. LEXIS 15109, at *22 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).
>
> In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue,* 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that

could reasonably be expected to produce' " her symptoms. *Id*. (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id*.

Here, the ALJ began his discussion of Plaintiff's residual functional capacity by citing to §404.1529, noting that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as required by that regulation. (Tr. 13). He also referred explicitly to the applicable two-step process, noting that he must first decide if Plaintiff had an impairment that could reasonably be expected to produce the symptoms in questions, and then determine whether the objective medical evidence and other evidence supported her testimony about the limiting effects of those symptoms. (Tr. 13-14). He then summarized her written function report and her testimony, and explained why, in his view, the objective findings did not provide "strong support" for her allegations. (Tr. 15). That statement was immediately followed by reference to a medical opinion rendered shortly after her injury to the effect that she could do light duty work. The ALJ then noted that Plaintiff's test results did not change significantly over the next eighteen months, that Dr. Coniglio stated several times that she could perform work-related functions, and that although others expressed contrary opinions, Plaintiff's daily activities of daily living showed that she could do many things which are required by basic work activity. (Tr. 15-18).

As the Commissioner's memorandum points out (Doc. 12, at 21), this discussion contradicts Plaintiff's claim that the ALJ either performed the required two-step analysis in the wrong order or skipped a step altogether. The manner of his analysis is what the applicable regulation and ruling require. It also demonstrates that the ALJ adequately identified which evidence contradicted Plaintiff's subjective allegations of disabling symptoms. She did not allege a multitude of such symptoms, so the focus of the ALJ's discussion on the extent to which her back injury and leg pain impacted her ability to work was appropriately detailed to allow the Court to review it and to determine if the ALJ discharged his regulatory duties on this issue. Because the Court does not find any legal error in the way the ALJ discussed the relationship between Plaintiff's allegations and the remaining evidence, and mindful of the deference which is due to an ALJ's credibility finding, *see Wynn, supra,* the Court concludes that this third claim provides no basis for reversal or remand.

### V. CONCLUSION AND ORDER

For the following reasons, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings, (Doc. 10), **DENIES** the Commissioner's motion (Doc. 12), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

/s/ Terence P. Kemp
**United States Magistrate Judge**